IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JOHN DOE 1, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:23-cv-3 (MTT) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## ORDER

The plaintiffs in this Federal Tort Claims Act ("FTCA") case are the parents of minor children who suffered physical and emotional abuse at the hands of their government-employee caregivers at a government-operated childcare center in Warner Robins, Georgia. Doc. 1. The government moves to dismiss, arguing the FTCA's intentional tort exception, 28 U.S.C. § 2680(h), preserves the government's sovereign immunity and thus dismissal is warranted on jurisdictional grounds. Doc. 6. In response, the plaintiffs argue the government voluntarily undertook an affirmative duty to care for children, and it breached that duty when the children in its care suffered physical and emotional abuse. Doc. 12-1. That duty, the plaintiffs contend, is "independent" of the 28 U.S.C. § 2680(h) excepted conduct. *Id.* For the reasons discussed below, the government's motion to dismiss (Doc. 6) is **GRANTED**.

### I. BACKGROUND

The abuse at issue occurred in early 2021 at the Robins Air Force Base Child Development Center West ("CDCW"). Doc. 1 ¶ 3. The plaintiffs contend that two of the CDCW's caregivers, Zhanay Kiana Flynn and Antanesha Mone Fritz, both government

employees, subjected their children to a variety of physical abuse, which included striking, kicking, and pushing, and forcing them into confined spaces when the children complained of mistreatment.  *Id.* ¶¶ 6-7.  According to the plaintiffs, a third government employee, the director of CDCW, was aware of the abuse and failed to report it in violation of numerous Air Force Child Development Center ("CDC") guidelines.  *Id.* ¶ 8.

The government moves to dismiss, arguing, in relevant part, that the intentional tort exception to the FTCA bars the plaintiffs' claims and that no "independent duty" exists to save them.  Doc. 6-1.  In response, the plaintiffs contend the government breached the Georgia common law duty "to exercise reasonable care for the safety of the child … gauged by the standard of the average reasonable parent," in addition to a variety of CDC guidelines it voluntarily adopted to ensure the safety of the children in its care.  Doc. 12-1 at 5.  The Court allowed the parties to submit supplemental briefs, and the plaintiffs subsequently moved to amend.  Docs. 18; 19; 26.  The government argues the differences between the plaintiffs' complaint (Doc. 1) and proposed amended complaint (Doc. 26-1) "are only window dressing," and thus the plaintiffs' motion to amend should be denied as futile, and the government's motion to dismiss should be granted.  Doc. 27 at 3.

## II. STANDARD

An action may proceed in this Court only if federal subject matter jurisdiction exists.  *Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004).  To this end, Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss claims for lack of subject matter jurisdiction.  When subject matter jurisdiction is

challenged, "the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

### III. DISCUSSION

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA provides a limited waiver of sovereign immunity and is the exclusive remedy for "injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act of omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1); *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 843 (11th Cir. 2013). That waiver, however, "must be construed strictly in favor of the government." *Reed v. U.S. Postal Serv.*, 288 F. App'x 638, 639 (11th Cir. 2008) (citing *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1263 (11th Cir. 2000)). Indeed, "Congress extended jurisdiction only for claims in which 'the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Smith v. United States*, 14 F.4th 1228, 1232 (11th Cir. 2021) (quoting 28 U.S.C. § 1346(b)(1)). Furthermore, the waiver is limited by several exceptions, which, if applicable, preserve the United States' sovereign immunity and, thus, deprive the Court of subject matter jurisdiction. *See Meyer*, 510 U.S. at 475; *Boda v. United States*, 698 F.2d 1174, 1176 (11th Cir. 1983).

Relevant here, the FTCA's intentional tort exception bars "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). "A claim will be deemed to have arisen from a § 2680 excepted

tort if the governmental conduct that is essential to the plaintiff's cause of action is encompassed by that tort." *Alvarez v. United States*, 862 F.3d 1297, 1304 (11th Cir. 2017) (quoting *Zelaya v. United States*, 781 F.3d 1315, 1333 (11th Cir. 2015)). But "in at least some situations the fact that an injury was directly caused by an [intentional tort] will not preclude liability against the Government for negligently allowing the [intentional tort] to occur." *Id.* at 1308 (quoting *Sheridan v. United States*, 487 U.S. 392, 398 (1988)).

**A. The Eleventh Circuit's Interpretation of the FTCA's Intentional Tort Exception**

Both parties agree that *Sheridan v. United States*, and the Eleventh Circuit's application of *Sheridan* in *Alvarez v. United States*, control the outcome of this case. Docs. 18; 24; 25. The Court will address each in turn.

In *Sheridan v. United States*, 487 U.S. 392 (1988), the Supreme Court held the intentional tort exception did not bar a claim alleging that government employees negligently failed to act to prevent an assault and battery committed by a government employee. Before turning to the facts of the case, the Court first addressed *United States v. Muniz*, 374 U.S. 150 (1963), in which the Supreme Court "held that a prisoner who was assaulted by other inmates could recover damages from the United States because prison officials were negligent in failing to prevent the assault that caused his injury." *Sheridan*, 487 U.S. at 399. In *Sheridan*, the Court reasoned "[t]wo quite different theories might explain why Muniz' claim did not 'arise out of' the assault that caused his injuries." *Id.* Under the first theory, "the assailant's individual involvement would not give rise to Government liability, but antecedent negligence by Government agents could, provided of course that similar negligent conduct would support recovery

under the law of the State where the incident occurred." *Id.*  But the Court in *Sheridan* did not rely on that reasoning; rather, it proceeded under the second theory, which turned on the idea that the intentional tort exception "must be read against the rest of the Act." *Id.* at 400.  Therefore, the exception applies "only to claims that would otherwise be authorized by the basic waiver of sovereign immunity." *Id.*  "Since an assault by a person who was not employed by the Government [i.e., the prisoner in *Muniz*] could not provide the basis for a claim under the FTCA, the exception could not apply to such an assault; rather, the exception only applies in cases arising out of assaults by federal employees." *Id.*

Turning to the facts of *Sheridan*, the plaintiffs, both civilians, alleged that the United States negligently failed to prevent an intoxicated off-duty sailor from shooting at them, causing injury to one of the plaintiffs and damage to their car while they were driving on a public street near Bethesda Naval Hospital. *Id.* at 393-94.  Just prior to the assault, three naval corpsmen found the servicemember in an obviously intoxicated state brandishing a rifle, and attempted, but failed, to take the servicemember to an emergency room. *Id.* at 395.  By adopting regulations prohibiting the possession of firearms on the naval base and "voluntarily undertaking to provide care" to the intoxicated servicemember, the Supreme Court reasoned the United States had assumed the responsibility of performing its voluntarily undertaken Good Samaritan duties with reasonable care. *Id.* at 401.  This basis for liability, the Court stated, was "entirely independent of [the intoxicated servicemember's] employment status." *Id.*  The Court concluded "the mere fact that [the servicemember] happened to be an off-duty federal employee should not provide a basis for protecting the Government from liability

that would attach if [the servicemember] had been an unemployed civilian patient or visitor in the hospital." *Id.* at 402. In short, because the claimed liability for the drunk sailor's conduct had nothing to do with the sailor's government employment, § 2680(h) did not bar the plaintiffs' claims.

The significance of the fact that the plaintiffs' claim had nothing to do with "employment status" is fleshed out in Justice Kennedy's concurrence.

> If the allegation is that the Government was negligent in the supervision or selection of the employee and that the intentional tort occurred as a result, the intentional tort exception of § 2680(h) bars the claim. Otherwise, litigants could avoid the substance of the exception because it is likely that many, if not all, intentional torts of Government employees plausibly could be ascribed to the negligence of the tortfeasor's supervisors. To allow such claims would frustrate the purposes of the exception.

*Id.* at 406-07 (Kennedy, J., concurring).

In *Alvarez v. United States*, 862 F.3d 1297 (11th Cir. 2017), former federal law enforcement officers and their spouses alleged McLeod, a federal employee,[1] tricked them into investing in a fraudulent bond fund through "omissions during McLeod's seminars" which gave the investors "undue confidence in McLeod's credibility." *Id.* at 1300, 1304. In determining whether § 2680(h) barred the investors' claims, the Eleventh Circuit expressly declined to adopt the "antecedent negligence" theory rejected in *Sheridan*. *Id.* at 1309. Under the second theory, the investors argued that McLeod's conduct aside, "agency employees here had an independent duty to protect employees from impermissible solicitations and commercial activity." *Id.* The Eleventh Circuit

---

[1] "Notably, Plaintiffs' amended complaint alleged that McLeod was a government employee, not a contractor, a contention they stood by in defending the court's jurisdiction." *Alvarez*, 862 F.3d at 1300. The Court noted that if McLeod was not a government employee, then recovery would be barred by the plain language of the FTCA. *Id.* at 1303.

disagreed. The Court first noted "[t]he alleged negligent conduct of the agency employees stems from both their failure to stop McLeod's solicitation (non-communications) and their endorsement of McLeod (miscommunications)." *Id.* at 1305. Therefore, unlike in *Sheridan*, "the Government's alleged negligence was closely connected to McLeod's employment status .… McLeod's presentments under the auspices of the Government were fundamental" to carry out his scheme. *Id.* at 1309. Because the investors' claims, "no matter how framed … [were] connected to McLeod's employment status as a governmental employee hired to help discharge the Government's duty to provide retirement assistance to its employees," the Eleventh Circuit rejected the investors' argument and held that because "the Government's liability was not independent of McLeod's employment status," 28 U.S.C. § 2680(h) barred the investors' claims. *Id.* at 1310.

**B. The FTCA's Intentional Tort Exception Bars Plaintiffs' Claim**

The inevitable result of *Sheridan* and *Alvarez* is that the intentional tort exception bars the plaintiffs' claims here, regardless of how they are framed.[2] Just as in *Alvarez*, the plaintiffs' claims turn on the government's failure to supervise or monitor its employees in the performance of their job duties. Docs. 1 ¶¶ 10-12; 26-1 ¶¶ 7-9, 12-13. For example, the plaintiffs' complaint alleges the government's liability stems from the CDCW's director failure to stop Flynn and Fritz from abusing the plaintiffs. Doc. 1 ¶¶ 7-8. And the plaintiffs' proposed amended complaint includes allegations that expand on that claim, e.g., the government's failure "to monitor its surveillance cameras despite

---

[2] Had the Eleventh Circuit adopted an antecedent negligence theory with respect to the FTCA's intentional tort exception, the plaintiffs might fare better. *See, e.g.*, *Doe v. United States*, 838 F.2d 220, 222-25 (7th Cir. 1988); *Bodin v. Vagshenian*, 462 F.3d 481, 487-491 (5th Cir. 2006).

notice of ongoing abuse" by Flynn and Fritz.  Doc. 26-1 ¶¶ 9-10.  But no matter how the plaintiffs frame their claims, they are "connected to [Flynn and Fritz's] employment status as [] governmental employee[s] hired to help discharge the Government's duty to provide [childcare] to its employees."  *Alvarez*, 862 F.3d at 1310.  Actually, not just connected to but entirely dependent on.  Because "the Government's liability [is] not independent of [Flynn and Fritz's] employment status," the intentional tort exception bars the plaintiffs' claims.  *Id.*

## IV. CONCLUSION

The conduct alleged here is outrageous.  Thus far, two government employees have pled guilty to the "care" they provided to the plaintiffs' children.[3]  Perhaps those children should be afforded a remedy, but none is provided by the Federal Tort Claims Act.  Accordingly, the government's motion to dismiss (Doc. 6) is **GRANTED**.  Because any amendment would be futile—the plaintiffs' proposed amended complaint makes that clear—the plaintiffs' motion to amend (Docs. 19; 26) is **DENIED**.

**SO ORDERED**, this 29th day of June, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] *United States v. Flynn, et al.*, 5:22-cr-00053-CAR-CHW, (M.D. Ga. May 9, 2023), Docs. 65; 67.